Thanks to our third argument of the morning, it's Appeal No. 23-1790, Rodney Clemons v. Wexford Health Sources. Mr. DeLeon, correct? That's right. Good morning. Good morning. May it please the Court. The question here is whether the District Court erred in finding that no reasonable jury could find that any of the defendants were deliberately indifferent to Mr. Clemons' foot condition. Now, the District Court did at least consider three pieces of evidence that I think are very important to one of the most salient instances of deliberate indifference on this record. Mr. DeLeon, before you go too far, you're saying any of the defendants. Dr. Funk was a defendant below. I don't see anything in your briefs challenging the District Court's ruling finding for Dr. Funk. Are you appealing the ruling as to Dr. Funk? No, we're not. We're not proceeding on that one. So, the way I read your brief, you're focusing on Dr. Obesey and Wexford. Correct. That's right. I want to focus on three of the different facts that the District Court did consider as to Dr. Obesey and Wexford for one of the periods of deliberate indifference that we think is clearest on this record, which is the five-year referral delay. So, first was the Wexford UIC contract, in which Wexford gets a certain number of referrals every year that it can make to UIC that are covered by the contract. But above and beyond that, each additional referral incurs additional cost. The second are the 2014 and 2015 Wexford performance evaluations of Dr. Obesey, who is then Medical Director for Statefield Correctional, in which Dr. Obesey says that he's doing a good or even a great job in his self-assessment of keeping costs low for Wexford. But Wexford disagrees and says he's actually not meeting performance requirements and that he's over budget in the areas of off-site care. He has to take immediate steps to come up with ways of keeping costs yet lower. The third is Mr. Clemens' testimony about his conversations with Dr. Obesey about his foot condition. Hold on. Testimony or, I mean, affidavit testimony? Yes, right. His declaration testimony about... Because he said not a word about that in his deposition. Well, actually, in his deposition, he was asked open-ended questions about, you know, do you have anything else that you want to talk about? His job in his deposition is to answer the questions that he was asked. I would have thought, Mr. DeLeon, so I don't know that it's a sham affidavit, but I got to tell you, it's fishy. It is a fishy affidavit. I would have thought that if his whole theory of the case is that his treating physician said, you need to see a podiatrist, I can't refer you because referring you is going to cost money. I would have thought that that's what he said every other line in that deposition, even in ways not responsive to questions. I didn't see anything like that. Well, what you can see in this record is that... It's like his whole theory of the case is missing from his deposition. That's odd. I actually don't think that it's that odd, given this record, because this all centers around these conversations that Mr. Clemens had with Dr. Obasi, right? And in his grievances, he several times will talk about that he had conversations with Dr. Obasi about off-site referrals, and that Dr. Obasi was saying, well, Wexford's kind of standing in the way of that. And that was in the record. And then in Mr. Clemens' amended complaint, he specifically says that Dr. Obasi said, you need to see a podiatrist, but you're going to have a hard time seeing that because of Wexford. And what you have in mind is the single reference in paragraph 30. Well, there is that reference. It's an allegation that's in the amended complaint. And look, his job is to answer questions honestly when he's asking his deposition. It's the attorney who's taking his deposition's job to ask the questions that they want answered. They could have asked him about those conversations, which he did allude to, and yet he wasn't asked about those. So then his job on summary judgment, when he is responding to Wexford and Dr. Obasi's summary judgment motion, is to then show why there's a disputed issue of material fact, which he followed his job under Rule 56C, and he included this declaration, which, as the district court said, and again, she's being reviewed for abusive discretion on that, is really consistent with and it builds on his deposition testimony and the evidence that's in the case. So with that declaration testimony, what Dr. Obasi has said is that, look, you need to see a podiatrist. Unfortunately, I can't refer you right now because, not because of a medical reason, but because I'm at my off-site limit right now. So if you return to me later, then I'll be able to get you in then. And every time Mr. Clemmons returned to him after that, the answer was always the same. I'm at my limit. But all along, Dr. Obasi is treating him, including with prescribing the one type of the New Balance shoe, the high-top, treating him in a way that he's reporting back, the shoe's working. And he's prescribing pain management. He's giving him the brace. He ordered an x-ray at one point in time. He gave him insoles. He gave him a knee brace. I mean, Dr. Obasi's doing an awful lot to be exhibiting deliberate indifference to Mr. Clemmons' health condition. Well, the standard for deliberate indifference is, does the doctor know something that he's supposed to be doing in his medical judgment? And he doesn't do it. So Dr. Obasi is giving... Well, it's a little higher than that. It's, does he disregard a substantial risk of harm or do something approaching a total unconcern for the prisoner's welfare in the face of serious risks? And I think Judge Scudder's point is, if you look at the record, Dr. Obasi is seeing him almost monthly at one point. How could that be a total unconcern for his welfare? Well, it's a disregard of a substantial risk. I'm quoting from our case law. Right. It's a high bar because it requires showing of something approaching a total unconcern for the prisoner's welfare. That's what deliberate indifference is. There's also, as part of your case law too, that the patient does not have to be literally ignored. So how would all of the care that he got from Dr. Obasi, how could that have been deliberately indifference? That he was, that Dr. Obasi was ignoring him or disregarding a substantial risk? Well, because with Dr., particularly after the point at which Dr. Obasi had been prescribing these wide-toed shoes and he had been giving these, been getting these wide-toed shoes for a certain period of time that were offering him some relief. At a certain point, those wide-toed shoes start getting denied. And if Dr. Obasi... But not by Dr. Obasi. Right, but after... Dr. Obasi keeps putting in a request for them. Well, he actually, after the first time the request was denied, he actually waited a full six months before he even submitted another request. And there is case law, right, that certain, you know, even weeks delay can sometimes be deliberately indifferent. But in between there, he sees him, he's offering other treatment. He offers a brace to him, trying other methods since Wexford had turned down the shoes. So Dr. Obasi says, well, let's try some other things. Well, there's, but there's also testimony that what he was telling Mr. Clemens was, you actually need to see a podiatrist for this foot condition. So let's assume that's true. Yes. And we view things in the light most favorable to your client. Right. How do you get around the fact that when he did go see a podiatrist, the podiatrist ordered essentially the exact same course of treatment that Dr. Obasi was treating him? It's actually a little bit different. So Dr. Obasi was giving some of these wide-toed shoes. But what the podiatrist, Dr. Keene, said is he actually needs to be getting shoes that are wide enough to accommodate his condition. So they're not actually jamming his feet together and causing a lot of pain that can cause infections and can cause a worsening of the disease. But it also needs to have custom orthotics. So the shoes need to be wide enough to accommodate. And then he needs to have custom orthotics so that they're being held in place, both to alleviate the pain, but also to alleviate the progression of the condition. As our expert has said, you know, if he had been getting the correct shoes, which is what he ultimately got, these wide shoes with these custom orthotics, if he had been given that from the beginning, his condition, first of all, he would have alleviated his pain. Weren't the wide shoes the same type of shoes that Dr. Obasi was putting orders in for? Not with the custom orthotics. Put the custom orthotics aside. The wide shoes, I think, were exactly the same thing Dr. Obasi had ordered, right? Well, it's part of a package deal, right? So it's kind of like having a cast where you're keeping this condition sort of immobilized so that it doesn't progress to the point where ultimately surgery, corrective surgery, became necessary. Wasn't that the purpose of the inserts that Dr. Obasi ordered? They may not have been custom, but inserts. So inserts that are in shoes that are too, you need to have both, right? So if you have shoes that are too narrow and then you put inserts on top of those shoes that are too narrow, they're not doing their job, right? It's just further jamming the toes in and it's making it so that it's actually even more painful because you're making something that's already too narrow even more narrow. If you have something that's wide enough and then you're putting the orthotics in there, and then that's what's actually accommodating this condition and keeping it from getting worse. Why isn't there evidence then that Mr. Clemons, I just don't see this at all. Mr. Clemons saying, why do you continue to prescribe the New Balance high tops? They don't work. They don't work. My foot and ankle pain is worse than it's ever been. It's not getting any better. That is not the record before us. The record before us is, in fact, at one point in time, I think he tells a nurse practitioner, the New Balance are perfect. He does say that the wide-toed shoes... It just seems very difficult against the backdrop of everything Dr. Obasi was doing and the statements that are in the record that your client was making to see a jury issue on deliberate indifference here. Well, put yourself in... Maybe it's negligence for not doing the, what were you calling them, the kind of prescribed, the implant, the kind of tailored implant? I don't see it as a deliberate indifference case. It's more than negligence when the doctor actually says, this is something that requires a specialist, which ultimately it did because it was Dr. Keene's recommendation that was ultimately followed. And that was what, as our expert has said, if it had been followed earlier when he should have been referred to him, the need for corrective surgery could have been prevented. So Dr. Obasi is telling his patient, I think that you need to see a specialist for this. And especially after he knows that his patient is no longer getting anything that's alleviating his pain whatsoever. Sure, he's making the request, the request is denied. But what do you do when you're Dr. Obasi in that hands? And when you're in that position? Do you say, well, really his hands are tied. There's nothing he can do beyond this. His hands are not tied. He's actually telling someone, well, what you need to do is see a podiatrist. And he's not even making the referral. And he says, there's not a medical reason why I'm not making the referral. I'm doing that solely because of a cost-saving policy. If he had done that, if he's not getting listened to, maybe the podiatrist is going to get listened to. And if he's not, and he doesn't know what to do to correct this, to actually correct the progression of the disease, the podiatrist does. And in fact, the record shows that it was the podiatrist who came up with the correct solution. Which if it had come up, if we had done that before, would have actually solved this. So I think, when you take all that together, I understand it's not that he did nothing. But he was faced, I mean, the record shows that there was three instances, at least in 2016, when Dr. Obasi saw Mr. Clemens. That is all after he, you know, first of all, as the district court had said, well look, these performance evaluations, right? These performance evaluations might be able to support a reasonable inference that Dr. Obasi was over-prioritizing costs after he received them. Before that, you know, I said I think a reasonable inference might be that he was just ignoring costs at that point. So is your deliberate indifference theory, like the one that we dealt with, like Greenough, and what is it, good cases like that, that a physician is persisting in a known line of ineffective treatment? Yes, which he is at that point. You know, after the shoes are no longer being prescribed in 2015, he knows, and his patient is constantly coming back and telling him, I'm not getting any relief. I used to be getting at least these wide-toed shoes, which were helping a little bit. And he's, and especially when the doctor actually has an idea, this is not a negligence thing, because it's not something where the idea didn't occur to him. When he says really what you need to do is go to a specialist, you should order the specialist. And not, you know, you should make a referral to a specialist. And not doing that when you know as a doctor that that's what your medical judgment is saying that you should do, and the reason why you're not doing it is because you're following a cost-saving policy, that does get to deliberate indifference. Because, you know, again, these periods in which he was talking to him in 2016, after he's no longer getting the shoes, those are after he starts getting the performance evaluations, which even as the district court said, could support an inference that he was over-prioritizing costs at that point. Mr. De Leon, you want to save the rest of your time for rebuttal? You don't have to. You can use it now. Yes. Am I in my time for the 10 minutes or for the full 15 minutes? Yeah. So you have an overall 45. We'll give you, I mean, we'll round it up, but that's the total time you have left. Okay. I will reserve the rest of my time for rebuttal. Thank you. Yep. No problem. Let's hear from, is it Mr. Craig? Please, the court. My name is Patrick Craig, representing Wexford, Dr. Arthur Funk, and the estate of Dr. Sala Obeisi. The district court's order granting summary judgment in favor of these defendants should be affirmed. First, to your Honor's point, and as Clemens conceded, he's abandoned any challenge to the district court's grant of summary judgment to Dr. Funk by failing to address an order on appeal. Regarding Dr. Obeisi, this court should affirm summary judgment in favor of his estate because no reasonable jury could find Dr. Obeisi was deliberately indifferent in treating Clemens' complaints of pain. The chronology of medical care here shows Dr. Obeisi consistently submitted requests for shoes that Clemens sought, and his operative complaint here claimed that he was stopped receiving the shoes that he had been given, that were being prescribed for him, and the shoes were not the main allegation in the complaint. Addressing those shoes, these orders for special shoes were entered in addition to orders for an ankle brace, shoe inserts, and pain medication. And from 2012 through 2015, Clemens received the shoes that he requested, and Dr. Obeisi on multiple occasions wrote permits, allowing Clemens to continue to wear those shoes. Clemens admitted to multiple other physicians, and in his operative complaint, that Dr. Obeisi's plan of care worked for him, and the special shoes actually helped his pain. Clemens' frustration in this case stems from Collegial Review eventually approving an alternative plan of care where those special shoes stopped being ordered. This had nothing to do with Dr. Obeisi, who then continued to submit requests for Clemens to receive those shoes after Wexford adopted an alternative plan of care. Mr. Craig, let's assume for a second that the court deems the affidavit, the declaration, the post-deposition declaration, summary judgment declaration, a non-SHAM affidavit. In other words, appropriate. Can you still win? Sure. As the district court noted, even if the declaration is not a SHAM affidavit, no reasonable jury could find that Dr. Obeisi was deliberately indifferent for not referring Clemens to a podiatrist any earlier than he did in 2017. Dr. Obeisi's treatment decisions are presumptively valid and liability may only be imposed if no minimally competent professional would have done as he did. And this treatment plan in this case, as Clemens admitted to multiple treaters— Does it matter or create an issue of fact that the reason he didn't send him was allegedly for financial reasons as opposed to just a disagreement in treatment? If the affidavit is not a SHAM affidavit and the reason is cost, it would only create a tribal issue if it was cost with excluding reasonable medical judgment from the equation in addition to considering cost. And in this case, it cannot be said that reasonable medical judgment was eschewed in favor of just cost because, in turn, the treatment plan was ordered prior to the podiatrist counsel in 2017. What he says in paragraphs 6 and 7 of that affidavit are pretty direct. The issue of not being referred to a podiatrist at that time due to cost, even if that declaration statement is taken as true, it removes from the equation that there is still exercise of reasonable medical judgment in ordering an alternative plan of care with the special issues that Clemens admitted helped him. He also received insults and anger. But what do you think about the way paragraph 6 opens? Dr. Obese agreed that I needed to see a specialist for my condition. If Dr. Obese needed to see... Comma, ellipses, et cetera. That's a pretty declarative statement. First off, the medical records from Dr. Obese's plan of care at this time do not reference the need to see a podiatrist whatsoever. But assuming that these conversations happen as the declaration states, again, it's telling that when he actually does see a podiatrist, five years after he first sees Dr. Obese, the podiatrist recommends almost a mirror of kind of care, same shoes, the ankle brace, the pain medication. It's all the same. So there's no... What about that, Mr. DeLeon's argument that the soles and inserts were customized from the podiatrist as opposed to what Dr. Obese was doing, that that's a significant difference? Well, our experts testified that the shoes are still wide enough to accommodate the hammer toes and the bunions that were the ultimate conditions in this case. And to your Honor's point before, even if Clement's condition is true, that the insoles weren't perfect for his feet and weren't alleviating his pain, that doesn't amount to deliberate indifference. That may be an issue of facts with regards to a negligence claim, but he's still receiving care of giving him wider shoes, giving him an insole to accommodate his bunions and his hammer toes, and that does not equate to deliberate indifference in this case, even if his allegations are true in the declaration and assuming that the insoles he got were not proper for his bunions and hammer toes. Mr. Craig, my word's not yours. I agree with you that this affidavit is very fishy, but that's not the test. Why is it a sham affidavit? Sure. Well, I'll get into the issue of cost. To your point before, while Mr. Dalyan was speaking about how cost isn't referenced in the deposition testimony at all, both the district court and Clements ignored an important contradiction that was included in the declaration, that being Clements testified that his complaint In his deposition. That was one of his primary concerns. That was one of his primary concerns with Dr. Obese, and then in his declaration, he states that Dr. Obese never referred Clements to a podiatrist for off-site specialty care in the first place due to this concern over cost. This is a major contradiction that goes toward the heart of Dr. Obese's conduct in this case, and the district court found that the declaration served to build on statements Clements made during his deposition, but the declaration added statements that cost was the reason as to why. So, can I get nitpicky with you? Sure. Why is that a contradiction as opposed to a fishy supplement? Sure. So, review of the medical records shows that a podiatry consult was not contemplated at all by Dr. Obese. Then you have the deposition testimony, which states that why Clements was bringing this up was because Dr. Obese had ordered the special shoes and the consult, and Wexford was not approving all of his orders in collegial review, and Clements was filing this claim against Dr. Obese for not appealing those collegial review decisions, even though he was continuing to submit the orders for special shoes and consults. Now he's saying in the declaration that none of that happened. He definitely did not submit those requests to collegial review because he told Clements from the outset, I can't send you out to a podiatry because I have these referral limits and there's this issue of cost. None of that's mentioned in his deposition. This is new material that contradicts the deposition. Is that inconsistent? It might be new material, but is it inconsistent or does it contradict anything in the deposition? I believe changing a story that Dr. Obese didn't do certain things in the first place due to cost is inconsistent because he testifies during his deposition that he did submit those orders. It was Wexford's issue of collegial review not approving those orders that they previously approved. Was he represented by counsel at the deposition? He was represented by counsel. I have no, for the life of me, I can't think of why in the world he wouldn't be talking about this cost consideration in response to every other question. I agree, Your Honor. The district court found that this declaration served to build upon the deposition testimony, but this is a completely new theory that was not discussed at all during his deposition. It's not building onto it. It's constructing a whole new argument to try to avoid summary judgment. It's not a coincidence that there was no notion that cost was a part of Clemens' claims until after the summary judgment motion was filed, at which point this declaration was filed, which mirrored the allegations and facts from a case that was decided after the deposition where Dr. Obese told an inmate in a different case, I can't send you out for this referral because of costs. Well, none of this was testified to his deposition. This is all new material that is not found anywhere in the record, and he's relying solely on that declaration to prevent a finding of summary judgment. Can he consider cost? What's wrong with that? It's one thing if he says, I'm not going to send you to a specialist because of the cost, and I'm going to stop treating you, as opposed to saying, I could send you to a specialist or I would send you to a specialist, but for the cost. It's extraordinarily expensive, and I am going to continue to treat you like this. Come back in six months and we'll see if it's effective. I think doctors across America do that a lot. We're hearing a constitutional claim. This court has found on prior occasions that correctional health care systems can't consider cost, it just can't be done to the exclusion of reasonable medical judgment. Even assuming the declaration is true and considered by this court as it was by the district court, cost can be considered, it just can't be done to the exclusion of reasonable medical judgment. We contend that that's what happened here, because a reasonable alternative treatment plan was ordered at all times. Again, Clemens admitted to multiple other treaters, and he alleged in his complaint that that alternative plan of care was working for him. I agree that cost can be considered, just not to the exclusion of reasonable medical judgment. Just not to the exclusion of other treatment, right? I mean, he could sit there and say, well, I could send you for an X-ray, I could send you for an MRI, hell, I could even send you for a CAT scan, but I'm not going to do any of that because of the cost. Instead, I'm going to continue to treat you conservatively, and come back and see me in six months if these shoes aren't working. Agreed, and again, from 2012 to 2015, he was receiving those shoes. He's agreeing it's helping them. When the podiatry consults first ordered in 2017, when Dr. Obese recognizes that the bunions and hammer toes have progressed to a certain point, during all these times, he is ordering an alternative plan of care that is reasonable, and again, telling that the podiatrist in 2017 ordered substantially similar care to what Dr. Obese ordered five years prior, and the ultimate surgical intervention in this case that occurred in 2020 was still three years before the podiatrist was consulted in the first place, which would go towards the delay claim. I just want to touch on the Monell claim against Wexford with my remaining time. This court has described three types of corporate actions that may give rise to Monell liability, an express policy of a corporation that causes constitutional deprivation, a widespread practice that is so permanent and well settled, it constitutes customer practice, or a constitutional injury resulting from a person with final policymaking authority. Here, the purported cost savings policy regarding the podiatrist referral by Clemens' own admission is unwritten and not expressed, and Clemens failed to produce evidence concerning treatment of any other inmates. He also doesn't identify any person with final policymaking authority. He does not contest that his Monell claim concerns only the period of time of Dr. Obese's medical care, and he also concedes that he is wholly reliant on his own experiences in order to prove his Monell claim. Given all these concessions, creating a genuine issue of material fact from that scenario regarding systemic deficiencies of an inmate's own experiences is an extremely difficult task. He concedes that he's also reliant on one experience of cost-cutting measures during over a period of multiple years, and that one experience is not sufficient to show a widespread customer practice. His sole argument on appeal is that a single application of an offensive policy resulting in a constitutional violation can be sufficient to establish a Monell claim, and he relies only on the Calhoun versus Rampey case. But Calhoun supports that one application of an offensive policy can be sufficient only if the policy itself explicitly violates a constitutional right as enforced. But the unwritten policy here, as we discussed regarding cost, is not a constitutional on its face because correctional health care systems can't consider cost as long as it's not done to the exclusion of reasonable medical judgment, and this court has also found that the collegial review process by itself on its face is also not unconstitutional. Therefore, the unwritten policy from its place as an issue here is not facially unconstitutional. And notably, the court in Calhoun proposed a hypothetical scenario of a kind of policy that would be unconstitutional on its face, and it concerns correctional officers throwing away inmates' medications, and after this court in Calhoun determined that the policy in that case was not anything like that, it affirms summary judgment in favor of the defendants as this court should hear. At best, on the Monell claim, Clemens merely offered evidence that Wexler's actions may have been motivated in part by a desire to minimize costs, but his experience alone in that regard is insufficient to establish an unwritten policy of prioritizing cost affecting many inmates without regard to medical judgment. Unless there are any other questions, we ask this court to affirm this recourse judgment. Okay, Mr. Craig, thank you very much. Mr. De Leon, we'll give you a minute in rebuttal. Thank you. So, as Mr. Craig had said and others have said, cost can be a permissible factor, but it can't override medical judgment. Here the testimony is not that Dr. Obese said that cost was a factor. He said it was the factor. He didn't give any medical reason or justification for delaying the referral. In fact, he agreed with Mr. Clemens. He said, you need to see a podiatrist, and I'm just not going to do it because I'm at my limit. And, you know, try again, try again, try again. Maybe if there was one time in which he said, I'm not going to send you out right now because I've got a different treatment plan, and then, you know, after six months he went and did that, that would be one thing. But this is over the course of five years. That's the testimony. Try again, try again, try again, never with giving a medical justification for the delay. And I understand, as you said, Judge Scudder, that this is, you see it fishy. I've heard it said that this is self-serving. As the Seventh Circuit has said, self-serving testimony is testimony. That is why we have juries to decide whether things are credible or not credible. They could make the same inference that the district court did or that the other side urges you to make, but that, they haven't had the chance to do that. That's why a jury trial is necessary to resolve these genuine issues of material fact. Unless there are further questions, I'd ask that you reverse the district court. Okay. Very well. Mr. Dalen, thank you very much. Mr. Craig, thanks to you as well. We'll take the appeal under advisement. Thank you. Okay. All right.